IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CIP CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18cv58 |
| | ) | |
| WESTERN SURETY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This is a construction dispute involving the claim of a general contractor, CIP Construction Company ("CIPC"), against its subcontractor's surety, Western Surety Company ("Western"). Western now moves to dismiss or, alternatively, to stay judicial proceedings and seeks to compel CIPC to pursue its claims in arbitration. (Doc. 5.) Western also moves to disregard CIPC's surreply brief. (Doc. 15.) The motions have been fully briefed and are ready for decision. (Docs. 7, 11, 13, 14, 17 and 18.)

For the reasons set forth below, the court will consider the surreply, deny the motion to dismiss or stay insofar as it is made pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, but exercise its discretion to stay these judicial proceedings pending the outcome of the ongoing arbitration between CIPC and its subcontractor.

## I.  BACKGROUND

CIPC is the general contractor and owner of Bellemeade Village, a construction project in Greensboro, North Carolina (the "project").  (Doc. 1 ¶¶ 5, 6.)  CIPC contracted with United Forming, Inc. ("UFI"), a subcontractor, to complete the reinforced concrete for the project (the "subcontract").  (Id. ¶ 8; Doc. 1-2.)  Additionally, Western issued a performance bond to CIPC on which Western is the surety, UFI is the principal, and CIPC is the obligee (the "performance bond").  (Doc. 1 ¶ 5; Doc. 1-1.)

Western's performance bond incorporates the subcontract "by reference."  (Doc. 1-1 ¶ 1.)  The subcontract contains an arbitration provision, which states in relevant part:

> Arbitration. In the event of a dispute between the parties with respect to the terms of this Agreement or the parties' performance under this Agreement (a "Dispute"), the parties will submit the Dispute to arbitration pursuant to the provisions of the North Carolina Revised Uniform Arbitration Act . . . .

(Doc. 1-2 ¶ 34.)  The subcontract defines the "parties" as CIPC and UFI.  (Id. ¶ 1.)  The performance bond contains a judicial resolution provision, which states in relevant part:

> Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default . . . .

(Doc. 1-1 ¶ 11.)

The present dispute arose between CIPC and UFI under the

subcontract, and UFI served CIPC with a written arbitration demand. (Doc. 5-3; Doc. 7 at 4.)   CIPC gave Western written notice that UFI had refused to perform under the subcontract and was in default.   (Doc. 1 ¶¶ 29, 31.)   CIPC demanded that Western fulfill its duties under the performance bond and honor UFI's obligations under the subcontract.   (Id. ¶ 31; Doc. 1-6.)   Western responded that it was ready to meet its obligations under the performance bond once UFI's liability had been determined in arbitration. (Doc. 1 ¶ 35, Doc. 7 at 4.)

CIPC filed the present action on February 1, 2018.   Western now moves to dismiss, or alternatively to stay, the action and compel arbitration, contending that the subcontract's arbitration provision governs this dispute.   (Doc. 5.)   Pursuant to the parties' agreement filed in connection with Western's motion to dismiss, CIPC and UFI began an evidentiary hearing before an arbitrator concerning their dispute on June 18, 2018, and they anticipate an award by July 23, 2018.   (Doc. 5-4 at 4.)

## II.   ANALYSIS

Western argues that CIPC's dispute against it arising under the performance bond must be arbitrated and that the court should therefore dismiss or, alternatively, stay this lawsuit pursuant to the FAA or via the court's discretionary power, pending the resolution of CIPC's arbitration with Western.   Western further contends that its obligation under the performance bond is

dependent on UFI's liability, which will be determined in the ongoing arbitration. (Doc. 7 at 4, 8; Doc. 13 at 2, 9.) In response, CIPC contends that the arbitration clause in the subcontract is not incorporated into the performance bond and that its claim against Western may proceed.

## A. Motion to Compel Arbitration

### 1. Subject Matter Jurisdiction

Western moves to dismiss, or alternatively stay, the proceedings and compel arbitration, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), the North Carolina Revised Arbitration Act, N.C. Gen. Stat. §§ 1-569.1, et seq., and the FAA, 9 U.S.C. § 3. Western's argument is based on the contention that the court lacks subject matter jurisdiction to entertain the action because all issues before the court are subject to arbitration.

A court must consider its subject matter jurisdiction as a "threshold matter" prior to addressing the merits of the case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012). A plaintiff bears the burden of proving subject matter jurisdiction. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999). When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence

4

outside the pleadings without converting the proceeding to one for summary judgment." Id. (quoting Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (internal citations omitted)). The court should only grant the Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (quoting Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768).

In challenging this court's subject matter jurisdiction, Western relies on the Fourth Circuit's decision in Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., for the proposition that the dismissal of a complaint for lack of subject matter jurisdiction is proper when all the issues before the court are arbitrable. (Doc. 7 at 8 (citing Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001)). Western similarly argues that the text of § 4 of the FAA supports its interpretation that the court lacks subject matter jurisdiction over the dispute. (Id.); see 9 U.S.C. § 4 (providing that an aggrieved party may petition a "district court which, save for such agreement, would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement").

While the Fourth Circuit in Choice Hotels recognized that dismissal may be a proper remedy under the FAA where all matters

are subject to arbitration, the court did not address whether a binding arbitration agreement would divest the court of subject matter jurisdiction. Choice Hotels, 252 F.3d at 709-10. Western's reliance on the Fifth Circuit's opinion in Alford v. Dean Witter Reynolds, Inc. is similarly misplaced. 975 F.2d 1161 (5th Cir. 1992). In Alford, the Fifth Circuit held that the district court properly acted within its discretion when it dismissed an action pursuant to the FAA where all claims were subject to arbitration. Id. at 1164. As the Fifth Circuit recently clarified, however, "a dismissal may be appropriate 'when all of the issues raised in the district court must be submitted to arbitration,'" but "agreements to arbitrate implicate forum selection and claims-processing rules not subject matter jurisdiction." Ruiz v. Donahoe, 784 F.3d 247, 249-50 (5th Cir. 2015) (quoting Alford, 975 F.2d at 1164).

Though neither party has addressed the issue further, Western's argument is contrary to other case law. For example, in DiMercurio v. Sphere Drake Ins., PLC, the First Circuit held that an arbitration agreement does not divest the court of subject matter jurisdiction, recognizing that "[a]greements to arbitrate are now typically viewed as contractual arrangements for resolving disputes rather than as an appropriation of a court's jurisdiction." 202 F.3d 71, 76 (1st Cir. 2000). Notably, the court considered and rejected similar statutory arguments based on the language of 9 U.S.C. § 4, holding that Western's interpretation

reflected an outmoded view of a federal court's jurisdiction and conflicted with the other statutory provisions in the FAA. Id. at 76-77. While noting that § 4 authorizes a party to petition the court, "which, save for the agreement would have jurisdiction," 9 U.S.C. § 4, the court held that legislative history indicated that "the drafters understood that the problem was not really jurisdictional, but rather that the jurisdiction concept was an illogical remnant of ancient English law." Id. at 76 (citing H.R. Rep. No. 96, 68th Cong., lst Sess., 1-2 (1924)). In addition, the court noted that other more recently enacted provisions of the FAA affirm the court's jurisdiction to hear such disputes and its ultimate authority over a case even after a referral to arbitration. Id. at 77 (citing 9 U.S.C. §§ 204, 207); 9 U.S.C. § 204 ("An action or proceeding over which the district courts have jurisdiction . . . may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought . . . . (emphasis added)), § 207 (permitting a party to seek an order confirming arbitrator's award).

Courts have generally not regarded the presence of an arbitration agreement as a proper basis for a challenge to the court's subject matter jurisdiction. See, e.g., City of Benkelman, Nebraska v. Baseline Eng'g Corp., 867 F.3d 875, 880-81 (8th Cir. 2017) ("[A]n arbitration agreement has no relevance to the

question of whether a given case satisfies constitutional or statutory definitions of jurisdiction"); <u>Auto. Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.</u>, 502 F.3d 740, 743 (7th Cir. 2007) ("Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional . . . ."); <u>Hardie v. United States</u>, 19 F. App'x 899, 906 (Fed. Cir. 2001) ("Arbitration agreements are properly viewed as contractual arrangements for resolving disputes, not as documents divesting a court of jurisdiction."); 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1350 (3d ed. 2018) ("The presence of an arbitration clause has also not been regarded as a basis for a subject matter jurisdiction challenge under Rule 12(b)(1)."). [1]   Indeed, any finding that the court lacked subject

---

[1] In an unpublished opinion, the Fourth Circuit previously suggested that dismissal for lack of subject matter jurisdiction may be appropriate. <u>Silkworm Screen Printers, Inc. v. Abrams</u>, 1992 WL 317187, at *6 (4th Cir. 1992).   There, the court vacated a district court's denial of a defendant's motion to dismiss and to stay proceedings pending arbitration, providing the district court with the following instructions:

> If the district court finds that Silkworm agreed to arbitrate, it should enter an order directing arbitration in accordance with the agreement. It may either dismiss Silkworm's complaint for lack of subject matter jurisdiction or stay its proceedings pending arbitration and consideration of the award pursuant to Article V of the Convention.

<u>Id.</u>   Because unpublished opinions have no precedential value in this circuit, <u>Collins v. Pond Creek Mining Co.</u>, 468 F.3d 213, 219 (4th Cir. 2006), and CIPC has pleaded sufficient facts to invoke the court's jurisdiction, <u>Silkworm</u> does not require dismissal on jurisdictional grounds. <u>See</u> <u>Bayer CropScience AG v. Dow AgroSciences LLC</u>, No. 2:12CV47, 2012 WL 2878495, at *8 (E.D. Va. July 13, 2012) (acknowledging

matter jurisdiction would appear to preclude the court from entering any order compelling CIPC to arbitrate the dispute – relief Western seeks. Flores v. Gmri, Inc., No. 1:15-CV-1073, 2016 WL 7264845, at *3 (M.D.N.C. Dec. 15, 2016).

Even though the FAA does not provide an independent source of federal question jurisdiction, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983), CIPC has established that the court may properly hear this claim under its diversity jurisdiction. (Doc. 1 ¶ 3.); see 28 U.S.C. § 1332.[2] Because Western has failed to demonstrate that the subcontract's arbitration clause divests this court of its jurisdiction, Western's motion to dismiss on that basis will therefore be denied. See City of Benkelman, 867 F.3d at 881; DiMercurio, 202 F.3d at 76-79; Flores, 2016 WL 7264845, at *3 (denying motion to dismiss for lack of subject matter jurisdiction, but granting alternative motion to compel arbitration and stay pending arbitration); Bayer CropScience AG v. Dow AgroSciences LLC, No. 2:12CV47, 2012 WL 2878495, at *13 (E.D. Va. July 13, 2012) (same).

_____

conflicting authority and denying motion to dismiss for lack of subject matter jurisdiction).

[2] Western argues that CIPC improperly pleaded federal question jurisdiction under 28 U.S.C. § 1331 by referencing the Miller Act, 40 U.S.C. § 3131 et seq. Western argues that the Miller Act applies only to performance bonds for projects undertaken for the United States, which Western's bond is not. However, CIP has clearly pleaded diversity jurisdiction under 28 U.S.C. § 1332, and Western has not challenged this independent source of jurisdiction. (Doc. 1 ¶ 3.)

### 2.    Motion to Compel

Western moves alternatively to compel arbitration pursuant to the FAA.  The standard of review on a motion to compel arbitration is "akin to the burden on summary judgment."  Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 n.3 (4th Cir. 2016) (quoting Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc., 807 F.3d 553, 564 (4th Cir. 2015)).  Accordingly, the court may consider materials outside the pleadings.  Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC, 250 F. Supp. 3d 13, 16 n.5 (E.D. Va. 2017) (citations omitted).  A motion to compel arbitration should be granted where there are no genuine issues of material fact regarding the existence of an agreement to arbitrate.  Galloway, 819 F.3d at 85; Rose v. New Day Financial, LLC, 816 F. Supp. 2d 245, 251–52 (D. Md. 2011).

When presented with a question as to whether parties are required to arbitrate a dispute, the trial court is limited to resolving the "gateway dispute" of whether the claims are "arbitrable."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002); Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 104 (4th Cir. 2012).  Here, the parties do not dispute that the court is the proper forum to determine whether the dispute is arbitrable, nor do the relevant agreements contain "clear and unmistakable" language requiring that an arbiter make this determination.  Peabody, 665 F.3d at 102-03.

Thus, the court must determine whether the dispute is arbitrable.

The FAA establishes "a liberal federal policy favoring arbitration" agreements. <u>Moses</u>, 460 U.S. at 24.[3] "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings, and compel arbitration . . . ." <u>Murray v. United Food & Commercial Workers Int'l Union</u>, 289 F.3d 297, 301 (4th Cir. 2002) (citations omitted); 9 U.S.C. §§ 3-4. However, dismissal of the action may also be appropriate in cases where all issues before the court are arbitrable. <u>See</u> <u>Choice Hotels</u>, 252 F. 3d at 708-09.[4]

---

[3] The subcontract provides that disputes are governed by the North Carolina Uniform Revised Arbitration Act, N.C. Gen. Stat. § 1-569.1 <u>et seq.</u> (Doc. 1-2.) However, the FAA preempts conflicting state law, making analysis under the FAA appropriate. <u>See</u> <u>Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.</u>, 489 U.S. 468, 477 (1989).

[4] While 9 U.S.C. § 3 requires a stay, federal circuit courts are divided as to whether the district court retains the discretion to dismiss an action where all claims are subject to arbitration. <u>Reed v. Darden Restaurants, Inc.</u>, 213 F. Supp. 3d 813, 820 (S.D.W. Va. 2016) (collecting cases). The Fourth Circuit has recognized that dismissal may be a proper remedy where all issues before the court are arbitrable. <u>Compare</u> <u>Choice Hotels Int'l v. BSR Tropicana Resort, Inc.</u>, 252 F. 3d 707, 708-09 (4th Cir. 2001)("Notwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."), <u>with</u> <u>Hooters of Am., Inc. v. Phillips</u>, 173 F.3d 933, 937 (4th Cir. 1999) ("When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings and to compel arbitration."). The Fourth Circuit has recognized the tension between its decision in <u>Choice Hotels</u> and <u>Hooters</u> as well as the existing circuit split on this issue, but it has not provided further guidance. <u>See</u> <u>Aggarao v. MOL Ship Mgmt. Co., Ltd.</u>, 675 F.3d 355, 376 n.18 (4th Cir. 2012); <u>Noohi v. Toll Bros.</u>, 708 F.3d 599, 605 n.2 (4th Cir. 2013).

The party seeking to compel arbitration must demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Am. Gen Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (quoting Adkins v. Labor Ready Inc., 303 F.3d 496 at 500-01 (4th Cir. 2002)). In this case, CIPC challenges only the presence of the second element, arguing that the parties never entered into a written agreement to arbitrate any dispute over the surety's obligations. (Doc. 11 at 5.)

Arbitration is 'a matter of consent, not coercion,' and federal arbitration policy does not alter that maxim." Raymond James Fin. Servs., Inc. v. Cary, 709 F.3d 382, 385 (4th Cir. 2013) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989)). The Fourth Circuit has recognized that the "'touchstones of arbitrability analysis' are the 'twin pillars' of the parties' 'consent and intent' to arbitrate." Id. at 385–86 (quoting Peabody, 665 F.3d at 103). While the court must resolve any ambiguity regarding the *scope* of the arbitral issues in favor of arbitration, Moses, 460 U.S. at 24-25; Wachovia Bank Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006), the question of the parties' intent does not enjoy

any presumption favoring arbitration, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

To determine whether the parties agreed to arbitrate a particular dispute, the court must consider relevant state law principles governing contract formation. Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005); see also Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). In a case premised upon diversity jurisdiction, a federal court applies the law of the forum state. Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 348 (M.D.N.C. 1995) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)). The parties agree, as the subcontract provides, that North Carolina law applies. (Doc. 11 at 6; Doc. 13 at 8; see Doc. 1-2 ¶ 31.)

In determining if an agreement to arbitrate exists, North Carolina law instructs "the court to examine the language of the contract itself for indications of the parties' intent . . . ." State v. Philip Morris, USA, Inc., 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005). The parties' intent is determined in light of the "contract as a whole." Id. The court must give the contract's language its ordinary meaning and presume that the parties intended the plain meaning of the words, absent evidence to the contrary. Anderson v. Anderson, 145 N.C. App. 453, 458, 550 S.E.2d 266, 269–70 (2001) (citations omitted). Further, the court must interpret all terms of the agreement harmoniously and consistently with each

other, unless it would be unreasonable to do so. Ray D. Lowder, Inc. v. N.C. State Highway Comm'n, 26 N.C. App. 622, 639, 217 S.E.2d 682, 693 (1975). And, where two documents are executed contemporaneously, they are to be construed consistently with one another. See Yates v. Brown, 275 N.C. 634, 640-41, 170 S.E.2d 477, 482 (1969) (citation omitted). Finally, ambiguous language must be construed contra proferentem, against the drafter. Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 169-70 (4th Cir. 2013) (citing Novacare Orthotics & Prosthetics E., Inc. v. Speelman, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000)).

Here, the complete subcontract was incorporated by reference into the performance bond, making their tandem interpretation necessary. Booker v. Everhart, 294 N.C. 146, 152, 240 S.E.2d 360, 363 (1978) ("To incorporate a separate document by reference is to declare that the former document shall be taken as part of the document in which the declaration is made, . . . as if it were set out at length therein." (citations omitted)). Thus, if possible, the court must read the arbitration and judicial resolution clauses as harmonious and consistent.

CIPC raises several arguments as to why there is no agreement between it and Western to arbitrate the dispute. First, CIPC argues that the subcontract's arbitration clause is limited to "dispute[s] between the parties" (Doc. 1-2 ¶ 34), and Western is not a party to the subcontract. (Doc. 11 at 10-11.) Second, it

contends that the presence of a judicial resolution provision in the performance bond demonstrates there was no intent to arbitrate disputes arising under it. (Id. at 9-10, 13-15.) Third, it argues that any ambiguity regarding the judicial resolution clause should be construed against the drafter, Western. (Id. at 15-16.) Fourth, it contends that even if there is an agreement to arbitrate, the present dispute falls outside of the scope of the arbitration clause. (Id. at 16-17.)

Western responds that it does not need to be a party to the subcontract because the existence of a "significant relationship" between this dispute and the contract requires arbitration of the dispute. While conceding that it is not a party to the subcontract, Western maintains this is irrelevant because the subcontract was incorporated by reference into the performance bond. (Doc. 7 at 8.) Second, Western contends that the judicial resolution clause was not intended to preempt, but can be harmonized with, the subcontract's mandatory arbitration clause. (Doc. 13 at 6.) Third, it contends, this dispute falls within the scope of the arbitration clause, which is not clearly limited by the intent of the parties, and must be construed in favor of permitting arbitration. (Doc. 7 at 2, 7.)

Often, arbitration provisions contain broad arbitration clauses that contain the phrase "arising out of or relating to" or similar language to define disputes subject to arbitration under

the agreement.  In those cases, the Fourth Circuit has held that such clauses embrace "'every dispute between the parties having a significant relationship' to the contract." <u>Great Am. Ins. Co. v. Hinkle Contracting Corp.</u>, 497 F. App'x 348, 354 (4th Cir. 2012) (quoting <u>Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.</u>, 96 F.3d 88, 93 (4th Cir. 1996)).  When applying this standard, the court must "determine whether the factual allegations underlying the claims are within the scope of the arbitration clause, regardless of the legal label assigned to the claim." <u>Am. Recovery Corp.</u>, 96 F.3d at 93.

In contrast to such broad arbitration clauses, the narrower arbitration clause in the subcontract in this case reflects an intent to limit its scope to disputes "with respect to the terms of the Agreement" that are "between the parties" – defined in the subcontract as CIPC and UFI.  (Doc. 1-2 ¶ 34.)  The subcontract also does not contain any reference to a surety that would indicate an intent to arbitrate the present dispute.  <u>Cf.</u> <u>Great American</u>, 497 F. App'x at 353 (holding that the dispute between a contractor and surety fell within the scope of the arbitration clause in the underlying subcontract, where the arbitration provision encompassed disputes "arising out of, or relating to" the agreement and the subcontract explicitly referenced both the subcontractor and the surety with regard to certain dispute resolution procedures).  Thus, the significant relationship test does not

appear to have the same application here as it ordinarily would in other cases.

To the extent possible, the court must interpret the mandatory arbitration clause and judicial resolution clause harmoniously and consistently with one another. Ray D. Lowder, Inc., 26 N.C. App. at 639, 217 S.E.2d at 693. In this case, the permissive language of the judicial resolution clause suggests that only the parties to the subcontract are bound by the arbitration provision. See Liberty Mut. Ins. Co. v. Mandaree Public District #36, 503 F.3d 709, 711 (8th Cir. 2007); W. Sur. Co. v. U.S. Eng'g Co., 211 F. Supp. 3d 302, 310–11 (D.D.C. 2016). Further, any ambiguity regarding the interpretation of the judicial resolution clause must be interpreted against the drafter, Western. Cosey, 735 F.3d at 169-70.

The district court's decision in Western Surety Company v. U.S. Engineering Company is instructive. In that case, a dispute arose between a contractor and a subcontractor regarding the performance of a contract for which Western served as a surety. U.S. Eng'g Co., 211 F. Supp. 3d at 304-05. Pursuant to the terms of the subcontract, the parties entered into arbitration proceedings. Id. The contractor sought to make a claim under the surety bond and requested that Western be made a party to the pending arbitration proceedings. Id. at 305. Western filed suit to enjoin the contractor from compelling arbitration proceedings

17

against it and making a claim on the surety bond. Id. In response

to the contractor's motion to compel arbitration, Western moved

for partial summary judgment as to the sole issue of whether it

must arbitrate the dispute. Id. at 304-05. Even though the

subcontract was incorporated by reference into the performance

bond, Western argued that the arbitration clause applied only to

the named parties of the subcontract and that a judicial resolution

clause substantively identical to that present here could not

otherwise be construed harmoniously with a mandatory arbitration

clause. (Doc. 11-1 at 12-18.)[5]

The court granted Western's motion for partial summary

judgment, holding that the defendant had not demonstrated that the

parties intended to arbitrate disputes arising between them out of

the performance bond. Id. at 311. Applying District of Columbia

law, the court interpreted the arbitration clause as limiting

arbitration to disputes between the contractor and subcontractor.

Id. at 309-10. The court found that the permissive judicial

resolution clause in the performance bond provided further

evidence of the parties' intent not to arbitrate, noting that "if

---

[5] In U.S. Engineering, the subcontract, which was incorporated by reference into the performance bond, contained an arbitration clause that stated "[a]ny controversy or claim of Contractor against Subcontractor or Subcontractor against Contractor shall be resolved by arbitration . . . ." U.S. Eng'g Co., 211 F. Supp. at 304. The performance bond provided in relevant part that that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in which the work or part of the work is located . . . ." Id. (emphasis added).

18

the court is to give every provision in the surety agreement meaning, it cannot ignore that there is a provision which calls for filing suit, not merely accepting arbitration as the sole avenue of recourse." Id. at 310–11. While U.S. Engineering is not binding on this court, its reasoning is persuasive.

Moreover, while the distinctions involving narrow or broad definitions of the parties and "permissive" and "restrictive" phrasing of contract provisions are not mechanically applied in the cases, the cases relied on by Western are distinguishable, principally because they involved broader arbitration clauses and narrower judicial resolution clauses. (Doc. 13 at 6 (collecting cases).) For example, in Cianbro Corp. v. Empresa Nacional de Ingenieria y Technologia S.A., the court held that a surety was bound by a mandatory arbitration clause incorporated by reference into a performance bond, where the arbitration clause covered all claims "arising out of or relating to" the contract. 697 F. Supp. 15, 20 (D. Me. 1988). The court found that the judicial resolution clause within the performance bond may coexist with the mandatory arbitration clause because it "simply declare[d] a 'statute of limitation' in which any litigation under the bond must be initiated." Id. at 19 (noting performance bond provided in relevant part "[a]ny suit under this bond must be instituted before the final expiration of two years from date on which final payment under the subcontract falls due" (emphasis added)). In Developers

<u>Sur. and Indem. Co. v. Resurrection Baptist Church</u>, the court also found that a broad mandatory arbitration clause similar to that in <u>Cianbro</u> was incorporated by reference into the performance bond, relying in part on the fact that the judicial resolution provision in the performance bond merely set forth a period of limitations by providing that "[a]ny suit under this bond <u>must</u> be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due." 759 F. Supp. 2d 665, 672 (D. Md. 2010). The court distinguished the case from the Eighth Circuit's decision in <u>Liberty Mut. Ins. Co. v. Mandaree Public District #36</u>, where the bond provided, "any proceeding, legal or equitable, under this Bond <u>may</u> be instituted in any court of competent jurisdiction [where] the work is located . . . within two years after the Surety . . . fails to perform its obligations under this Bond." 503 F.3d 709 (8th Cir. 2007) (emphasis added). The court noted, "[u]nlike the Mandaree performance bond, which contained permissive language, the instant performance bond employs restrictive language." <u>Id.</u> In the present case, by contrast, the language of Western's judicial resolution clause uses the permissive "may." (Doc. 1-1 ¶ 11.) Western argues that <u>Mandaree</u> is contrary to the holdings of the First, Fourth, Fifth, Sixth, and Eleventh Circuits. (Doc. 13 at 4 n.2.) However, <u>Mandaree</u> and the instant case are factually distinguishable from the other cases, due to their narrower arbitration clauses and

permissive nature of the judicial resolution clauses. See Developers Sur. & Indem. Co. v. Carothers Constr., Inc., No. 17-2292-JWL, 2017 WL 3674975, at *5 (D. Kan. Aug. 24, 2017) (noting "the cases commonly cited for that so-called majority rule are similarly distinguishable and thus unhelpful, as they involved situations in which the arbitration provision was not expressly limited to disputes between particular parties" (citing Schneider Elec. Buildings Critical Sys., Inc. v. W. Sur. Co., 165 A.3d 485, 493 n.5 (Md. 2017)).

CIPC argues that Western nevertheless should be estopped from arguing that arbitration is required because Western has previously been successful in arguing that arbitration is not required in cases dealing with the same performance bond language. (Doc. 11 at 2-3 (citing U.S. Eng'g Co., 211 F. Supp. 3d 302; Schneider Elec. Building Critical Sys., Inc. v. W. Sur. Co., 149 A.3d 778 (Md. 2016)).)

The Fourth Circuit requires four elements to be met before a court applies judicial estoppel: (1) "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation;" (2) "the position sought to be estopped must be one of fact rather than law or legal theory;" (3) "the prior inconsistent position must have been accepted by the court;" and (4) "the party sought to be estopped must have intentionally mislead the court to gain unfair advantage." Lowery

21

v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996) (internal citations and quotations omitted). However, the doctrine of judicial estoppel "does not prevent parties from asserting a legal theory inconsistent with one asserted earlier in litigation." Tenneco Chemicals, Inc. v. William T. Burnett & Co., Inc., 691 F.2d 658, 664 (4th Cir. 1982). Thus, even if Western did take an inconsistent position in prior litigation, Western's argument appears to be based in law, not in fact. See U.S. Eng'g Co., 211 F. Supp. 3d at 310-11. The present dispute concerns whether the parties are subject to arbitration under North Carolina law, not whether specific words factually do or do not appear in the contract. This raises a question of law, not fact, Bridas S.A.P.I.C. v. Government of Turkmenistan, 345 F.3d 347, 353 (5th Cir. 2003) (citations omitted), and judicial estoppel does not apply.

Thus, for all these reasons, the court finds that Western has failed to demonstrate that CIPC agreed to arbitrate disputes arising from the performance bond, and Western's motion to compel arbitration will be denied.

### B. Stay Pending the Outcome of Arbitration Between CIPC & UFI

Western argues that even if the court determines that the claims before it are not arbitrable, the court should exercise its discretion to stay the action pending the outcome of the ongoing

arbitration between CIPC and UFI.  CIPC opposes the request on procedural grounds, arguing in a surreply brief that Western's request for a discretionary stay is not properly before the court because it was first raised in Western's reply brief.  According to CIPC, Western previously sought only a *mandatory* stay pursuant to 9 U.S.C. § 3.  (Doc. 14 at 4.)  Western in turn moves to strike CIPC's surreply brief on the ground it was filed in violation of the court's local rules.  (Doc. 15.)

This court's local rules provide for a surreply only where the non-moving party raises an evidentiary objection in its reply. Starnes v. Veeder-Root, No. 1:15CV1002, 2017 WL 913633, at *1 n.1 (M.D.N.C. Mar. 7, 2017) (citing L.R. 7.6), aff'd, 694 F. App'x 200 (4th Cir. 2017); see Olvera-Morales v. Int'l Labor Mgmt. Corp., 246 F.R.D. 250, 254 (M.D.N.C. 2007) (noting "[s]urreplies are generally disfavored").  "Otherwise, courts generally 'allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply.'"  Starnes, 2017 WL 913633, at *1 n.1 (quoting DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010)).

Here, Western's request for a discretionary stay in its reply constituted a separate ground that should have been set out initially.  See L.R. 7.3(a) (requiring each motion be "set out in a separate pleading").  In its motion to dismiss, Western requested that the court "alternatively, stay judicial proceedings pending

arbitration award" and cited only the FAA. (Doc. 5 at 1; Doc. 7 at 6, 8.) Western never specified that it was also seeking a discretionary stay in the event the court determined it had subject matter jurisdiction. (Doc. 5 at 1-2, Doc. 7 at 2.) Similarly, Western's reply referenced its motion to stay the case "pending the resolution of the underlying arbitration," but failed to specify whether it was seeking a mandatory or discretionary stay. (Doc. 13 at 9.) While Western seems to have provided CIPC with adequate notice that it was seeking a mandatory stay pursuant to 9 U.S.C. § 3, the court cannot say that CIP had "fair opportunity" to respond to any argument regarding a discretionary stay, which, while closely related, involves different considerations. Therefore, to the extent the court considers Western's request for a stay based on the court's discretionary powers, concerns of fairness dictate that the court consider CIPC's surreply. See DiPaulo, 733 F. Supp. 2d at 670. Even though the manner in which Western made its alternative request did not comport with Local Rule 7.3(a), the court will nevertheless consider the merits of this motion because Western clarified its requested alternative relief in its reply brief and CIPC has been afforded an opportunity to respond. See Johnson v. Angels, 125 F. Supp. 3d 562, 564 (M.D.N.C. 2015) (considering the merits of motions despite defendant's failure to follow Local Rule 7.3(a), where defendants clarified their requested relief in a supporting brief and

24

plaintiff had an opportunity to respond).

Moreover, even in the absence of any motion, consideration of a stay always falls within the court's inherent power to act *sua sponte*. <u>Crown Cent. Petroleum Corp. v. Dep't of Energy</u>, 102 F.R.D. 95, 98–99 (D. Md. 1984) (citing <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254-55 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Maryland v. Universal Elections, Inc.</u>, 729 F.3d 370, 379 (4th Cir. 2013) (quoting <u>Landis</u>, 299 U.S. at 254).

Courts have recognized that a discretionary stay may be appropriate in cases where common issues of fact relating to the action may be settled in pending arbitration proceedings. <u>See, e.g.</u>, <u>AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, 242 F.3d 777, 783 (8th Cir. 2001) (citations omitted) (reversing district court's denial of a discretionary stay and remanding the case for reconsideration in light of a pending arbitration); <u>Am. Home Assur. Co. v. Vecco Concrete Const. Co. of Virginia</u>, 629 F.2d 961, 964 (4th Cir. 1980) (holding that a discretionary stay was appropriate where "questions of fact common to all actions pending in the present matter are likely to be settled" in a pending arbitration proceeding). In such cases, "[a] discretionary stay may well be needed to further the strong

federal policy favoring agreements to arbitrate." <u>AgGrow Oils</u>, 242 F.3d at 782 (citations omitted).

When considering a stay of proceedings, the court must "balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." <u>Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC</u>, 141 F. Supp. 3d 428, 452 (M.D.N.C. 2015) (quoting <u>Universal Elections, Inc.</u>, 729 F.3d at 375). A court may consider all relevant factors, including "judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay." <u>Id.</u> (citation omitted). Here, the competing interests weigh in favor of granting a stay. As Western notes, if this action is not stayed, the parties will be "forced to expend the time and expense to prove facts, claims and damages that are substantially duplicative." (Doc. 13 at 9.) Though Western may not be bound by the arbitrator's findings, as it is not a party to the proceeding, considerations of judicial economy and the avoidance of confusion and inconsistent results still warrant a stay. <u>Am. Home Assur. Co.</u>, 629 F.2d at 964; <u>Precision Biosciences, Inc. v. Cellectis S.A.</u>, 2011 WL 6001623, at *1 (E.D.N.C. 2011) (noting stays may be used to avoid wasteful litigation). Perhaps most importantly, Western has represented to the court that its liability will be dependent on the outcome of the pending

arbitration between CIPC and UFI. (Doc. 7 at 4 (noting that Western "stands ready to meet its obligations . . . if and when the liability and the amount of liability are ultimately determined [in arbitration]"), 8 (stating that Western's liability is "dependent on the establishment of UFI's liability"); Doc. 13 at 2 (representing that "the award of the arbitrator is expected to determine UFI's liability to CIPC — if any — under the Subcontract, and perforce Western Surety's obligations to CIPC under the Performance Bond"), 9 (noting that "Western Surety's obligations under the Bond are controlled by the outcome of the arbitration between CIPC and UFI").)

It would be wasteful to require the parties to engage in discovery to determine UFI's liability when it should be determined in the ongoing arbitration between CIPC and UFI. Additionally, the joint scheduling order filed in connection with Western's motion suggests that the dispute between CIPC and UFI will be resolved no later than July 23, 2018. (Doc. 5-4 at 4.) Thus, any delay is *de minimis*, unlikely to be prejudicial, and would save the court and parties from engaging in duplicative proceedings.

It seems plain that all relevant factors greatly favor staying the action pending the outcome of the ongoing arbitration between CIPC and UFI, whose imminent disposition will likely resolve the present action. Whether considered on Western's motion or by the court's action *sua sponte*, the court will exercise its discretion

to stay the proceedings pending the outcome of CIPC's arbitration with its subcontractor.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Western's motion to disregard CIPC's surreply (Doc. 15) is DENIED.

IT IS FURTHER ORDERED that Western's motion dismiss or alternatively stay the proceedings pending arbitration award (Doc. 5) is GRANTED to the following extent: exercising its discretionary authority, the court STAYS these judicial proceedings pending resolution of the arbitration between CIPC and UFI. The parties shall submit a joint report as to the status of the pending arbitration proceeding no later than August 13, 2018, which shall include a recommendation as to whether to continue or dissolve the stay.

/s/   Thomas D. Schroeder
United States District Judge

July 20, 2018